UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICE SUSSMAN,

        Plaintiff,        CASE NUMBER: 11-13247
                                  HONORABLE VICTORIA A. ROBERTS

v.

KEITH DALTON,

        Defendant.
_____/

## ORDER

### I. INTRODUCTION

This matter is before the Court on Keith Dalton's ("Defendant") motion for summary judgment. (Doc. 23). It has been fully briefed, and the Court heard oral argument on November 13, 2012. Defendant argues this case should be dismissed because he is entitled to qualified immunity.

Defendant's motion for summary judgment is **GRANTED IN PART**. The Court **GRANTS** summary judgment on Plaintiff's § 1983 malicious prosecution and *Brady* violation and her state law claim of malicious prosecution. It **DENIES** summary judgment on Plaintiff's § 1983 arrest claim and her state law claims of false arrest and imprisonment. Genuine issues of material fact exist as to whether Defendant acted with reckless disregard to the truth when he prepared a report which he knew would be used to determine probable cause for Plaintiff's arrest. A jury must decide certain questions of fact before the Court can rule on qualified immunity.

1

## II.      BACKGROUND

Plaintiff filed this 42 U.S.C. § 1983 and state law intentional tort action against Defendant based on events that began on April 10, 2010.  Then, Defendant was dispatched to the Village Laundromat ("Laundromat") to investigate Rachel Almos's ("Almos") allegation that money had been stolen from her wallet.  Almos says she accidently left her wallet on a washing machine near the front of the Laundromat while doing her laundry around 11:00 a.m.  When she returned around 2:30 p.m., the wallet was there, but the money in it was gone.

Defendant spoke with Almos and the Laundromat's manager, Katelyn Gall.  They told Defendant that they looked at the Laundromat's security video recordings and that there was footage of a person later identified as Plaintiff.  They said, Plaintiff picked up Almos's wallet, looked through it, placed it in her coat pocket, left the business, returned and placed the wallet back on the washing machine.  They showed Defendant the same portion of the video, saying they were beginning the video from the point where Plaintiff picks up the wallet.  Defendant viewed it and concluded it showed Plaintiff picking up the wallet and leaving with it in her jacket.

Defendant also interviewed customers at the Laundromat about the theft.  He spoke with Colleen Grinnell; she gave Defendant what proved to be Plaintiff's license plate number.

Defendant went to Plaintiff's house.  Plaintiff told him that she did not steal anything and that she was being set up.  Defendant told Plaintiff that there was video footage of her taking the wallet.  Plaintiff denied the allegation.  Defendant told Plaintiff that he was going to write a report, give it to the Prosecutor, and she would be charged

with the crime.  At his deposition, Defendant said that he knew his report would be determinative of charges filed.

His report -- written the same day -- describes his conversation with the manager, Almos, the other customer and Plaintiff.  The report also says that "[he] reviewed the video tape from the point the [Plaintiff] picked up the wallet; looked through it; place [sic] it in her coat; and exit the business."  He also notes that when Plaintiff denied touching the wallet he told her "I have [you] on video picking up a wallet; looking through it; and placing it in [your] front coat pocket."

After writing his report, Defendant says he reviewed the video again.  He says he first looked at footage showing Almos place her wallet on the machine.  He says that because the video is four to five hours long, bounces from camera to camera, and switches screens, he fast forwarded shots of the video to speed up his review.  After review in this fashion, Defendant says he confirmed that Plaintiff took the wallet.  He finalized his report and submitted it to a warrant officer.

On April 14, 2010, the owner of the Laundromat asked Defendant to serve a no trespass notice on Plaintiff, instructing her not to return to the Laundromat.  While serving the notice at Plaintiff's residence, Plaintiff and Defendant spoke about the theft again.  Plaintiff reiterated that she did not steal anything and if there was footage of her going through a wallet, it was her own wallet and not Almos's.  Plaintiff showed him her wallet.  Defendant prepared a report confirming this conversation and, in his report, Defendant agreed that it was similar to Almos's.  (This supplemental report did not make it to the warrant officer.)

In May 2010, the Prosecutor charged Plaintiff with Larceny in a Building in

3

violation of MCL 750.360.  On May 25, 2010, the Magistrate Judge issued a warrant for Plaintiff's arrest.

Nine months later, on February 16, 2011, at 4:00 a.m., Defendant and three other officers arrested Plaintiff at her home.  She was handcuffed, searched, and brought to the jail, charged with larceny in a building.

Plaintiff was arraigned the same day.  The Judge ordered that she appear on March 1, 2011, for preliminary examination.  She was released on her own recognizance.  Plaintiff was transported back to the jail for processing, and released at 4:10 p.m.

The Prosecutor subpoenaed Defendant for the March 1st preliminary examination.  Defendant says that he appeared with the video as evidence.  While at the hearing, Plaintiff's attorney asked for a copy.  While making the copy, Defendant says he watched the video without fast forwarding it; and, for the first time, he saw a different woman pick up the wallet before Plaintiff even showed up on the video.  Defendant immediately told Plaintiff's attorney and the Prosecutor about the first woman.  The preliminary examination was adjourned.

The Prosecutor told Defendant to investigate and identify this latest suspect.  Defendant did and after speaking with her, Defendant filed a supplement to his report.  In it he says that the "[video] shows her[, the latest suspect,] going through the wallet at the laundry mat [sic] before she left with it.  Shows her returning the wallet and removing it from her laundry basket.  Putting the wallet back on the machine and wiping down the machines with her sleeve to remove any finger prints."  At his deposition, Defendant said that he does not know if this latest suspect was charged by the

4

Prosecutor or arrested by the police.

It is undisputed that based on the discovery of the first woman on the video, the charge against Plaintiff was dropped.

Plaintiff filed a four Count Complaint on July 26, 2011 against Defendant and Washtenaw County alleging: (1) Count I - Fourth Amendment and Fourteenth Amendment claims in violation of 42 U.S.C. § 1983; (2) Count II - False Arrest; (3) Count III - False Imprisonment; (4) Count IV - Malicious Prosecution.

By stipulation, the claims against Washtenaw County were dismissed on September 20, 2011.

Defendant now moves to dismiss all claims against him.

### III. STANDARD OF REVIEW

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Accordingly, when a reasonable jury could not find that the nonmoving party is

entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

## IV.     ANALYSIS

### A.     42 U.S.C. § 1983 and Qualified Immunity (Count I)

Plaintiff's federal claim is based on 42 U.S.C. § 1983 ("§ 1983"). Plaintiff says there was no probable cause for her arrest or prosecution.  She says Defendant obtained an arrest warrant with information in his report that: (1) misstated that the video shows Plaintiff picking up Almos's wallet, (2) omitted that Plaintiff had a wallet similar to Almos's and (3) omitted that the video shows a woman other than Plaintiff picking up Almos's wallet.  Plaintiff says these misstatements and omissions prohibit the Court from granting Defendant qualified immunity.  She says this matter should proceed to trial and to prevail there, Defendant prove must that at the time of Plaintiff's arrest, there was probable cause to believe she had committed the offense, without reliance on the misstatements and with the inclusion of the omitted information.  (She also argues that Defendant would have to establish that at the time he instituted criminal proceedings against her – the date he filed his false report – there was probable cause to believe she committed an offense.)  She says the video footage did not establish probable cause for her arrest or prosecution, and Defendant's failure to turn over exculpatory evidence to the Prosecutor violated her right to due process and resulted in her malicious prosecution.

Plaintiff disputes that the video shows her picking up a wallet.  She says that the footage shows her taking her own wallet out of her coat pocket, going through her own wallet, placing it back into her coat and leaving the Laundromat.

Defendant says there was no violation of Plaintiff's constitutional rights. He says there was a judicial determination of probable cause on which he may rely. Defendant argues that he did not have a duty to review the complete video because after conducting his investigation based on what was known to him at the time, he determined that there was sufficient probable cause for an arrest. He says he did not withhold exculpatory evidence.

Defendant says a *Brady* violation in a §1983 action is not cognizable against a police officer. In the alternative, Defendant says Plaintiff's due process rights were not violated because she was not prosecuted.

Further, even assuming there was a constitutional violation due to lack of probable cause, Defendant says he is entitled to qualified immunity because he made an objectively reasonable mistake.

**1. §1983 FALSE ARREST CLAIM AND QUALIFIED IMMUNITY (Count I)**

The critical issue in a Fourth Amendment §1983 false arrest lawsuit is the existence of probable cause. Probable cause exists when the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v DeFillippo,* 443 U.S. 31, 37 (1979).

This is a wholly objective reasonable officer standard, and the officer's subjective motives are not relevant. *Whren v United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis.").

If probable cause exists, it is a complete defense to a §1983 unconstitutional

arrest claim brought under the Fourth Amendment. *United States v. Sease*, 659 F.3d 519, 525, n. 1 (6th Cir. 2011); *Gumble v. Waterford Township*, 171 Fed. Appx. 502, 507 (6th Cir. 2006) (unpublished) (quoting *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985) ("the existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff.").

Similarly, qualified immunity is a defense to some Fourth Amendment §1983 claims. Qualified immunity protects an executive official under certain circumstances; the critical inquiry is whether the official violated federal law that was clearly established at the time the official acted. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be clearly established in a fairly

> [P]articularized . . . sense. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law, the unlawfulness must be apparent. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)

The *Anderson v. Creighton* Court gave little guidance to other courts on how to determine the "contours" of a clearly established constitutional right. The court also recognized and allowed for the possibility that a police officer may "reasonably, but mistakenly, conclude that probable cause is present." *Id.* at 641.

Later in *Saucier*, the Supreme Court concluded that the critical issue is whether the officer made a reasonable mistake about the state of the law. *Saucier v. Katz*, 533 U.S. 194 (2001).

8

Thus, the question can be framed as follows: did the officer have arguable probable cause? Did the officer reasonably believe there was probable cause? Could a reasonable officer have mistakenly concluded there was probable cause? *Hunter v. Bryant,* 502 U.S. 224, 227, (1991); see also *Zellner v. Summerlin*, 494 F. 3d 344, 370 (2d Cir. 2007).

The Sixth Circuit held that "[q]ualified immunity extends to government officials' objectively reasonable mistakes," regardless of whether the government official's error is a mistake of fact, or a mistake based on mixed questions of law and fact." *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012)(citing *Peason v. Callahan*, 555 U.S. 231, 231 2009))(internal quotation marks omitted).

The Sixth Circuit applies a two-step inquiry to determine qualified immunity: (1) whether the defendant violated a constitutional right; and (2) whether that right was clearly established. *See Aldini v. Johnson*, 609 F. 3d 858, 863 (6th Cir. 2010). The Court has the discretion, in light of the facts and circumstances of the case at hand, to decide what the order of analysis will be. *Pearson, supra*, at 236.

**The Constitutional Violation Alleged**

A police officer has probable cause to arrest if there is a fair probability that the individual to be arrested committed the crime under investigation. *Northrup v. Trippett*, 265 F. 3d 372, 379 (6th Cir. 2001).

Plaintiff says the basis for the probable cause Defendant asserts, was the conversation he had with the owner of the Laundromat and Almos, and his own review of the tape which he says confirmed what they told him.

If the videotape did confirm what Defendant says is on the tape, the Court might

9

be inclined to agree with Defendant that there was probable cause to arrest Plaintiff. But, the tape doesn't confirm what Defendant put in his report. Importantly, his report was used to obtain the arrest warrant.

While an arresting officer can rely upon a judicial determination of probable cause as a shield and defense in a wrongful arrest case, he cannot do that if he knowingly or recklessly made false statements and omissions to a judicial officer, "such that but for these falsities the judge would not have issued the warrant." *Vakilian v. Shaw*, 335 F. 3d 509, 517 (6th Cir. 2003)(citing *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1996).

To overcome Defendant's assertion of qualified immunity, Plaintiff must establish "(1) a substantial showing that the Defendant stated a deliberate falsehood or showed a reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.* see also *Wilson v. Russo*, 212 F.3d 781, 786 (3rd Cir. 2000). The Court finds there are questions of fact that must be decided by the jury on both prongs, before it can decide the question of qualified immunity.

**Questions of Fact Exist on The First Prong: Whether Defendant Asserted A Deliberate Falsehood or Showed Reckless Disregard For The Truth**

> "An assertion is made with reckless disregard for the truth when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson* (quoting *United States v. Clapp*, 46 F. 3d 795, 801 n.6 (8th Cir. 1995)).

False assertions "can be made with reckless disregard for the truth even if they

involve minor details - recklessness is measured not by the relevance of the information but the demonstration of willingness to affirmatively distort the truth." *Id.*

Plaintiff alleges that Defendant showed reckless disregard for the truth by failing to view the videotape in its entirety and by accepting the word of the victim and the Laundromat owner, neither of whom was an eyewitness and both of whom also based their information on a review of the videotape. Importantly, the videotape does not show what the owner, the victim and the Defendant says it shows: no part of it shows Plaintiff picking up a wallet from a washing machine, leaving the Laundromat, returning and putting it back on the washer.

At the hearing, counsel for Dalton argued strenuously for qualified immunity, stressing that Defendant Dalton believed at the time he prepared his report, that the videotape, in fact, showed what he wrote in his report.

An officer's "good faith" in preparing a report that will be used to issue a warrant cannot be relied upon to grant qualified immunity. "Good faith on the part of the arresting officers is not enough." *Beck v. State of Ohio*, 379 U.S. 89, 97 (1964)(citing *Henry v. United States*, 361 U.S. 98, 102 (1959)). "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Beck, Id.*

Accordingly, Officer Dalton's good faith beliefs are not a consideration in this qualified immunity analysis and do not entitle him to qualified immunity.

"With respect to omissions, reckless disregard can be established by evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate

11

probable cause." *Miller v. Prince George's County*, 475 F.3d 621(4th Cir. 2007) (citing *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003); *Wilson*, 212 F.3d at 788; *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). Plaintiff says Defendant omitted information that Plaintiff had a wallet similar to Almos's. Defendant does not dispute that he omitted this information, but he implies that he was not under a duty to update the warrant officer with this information. He says that on the date he submitted his report, he disclosed all facts within his knowledge. But, that is not a true statement, inasmuch as the tape was at his disposal and he did not review it in its entirety.

Furthermore, the Court finds that Defendant did have a duty to update his report because none of his report had yet been submitted for a warrant. Defendant first spoke with Plaintiff on April 10th and submitted a report. He spoke to her again on April 14th. On April 22, 2010, before the Magistrate issued the warrant, Defendant filed a follow-up report of his conversation with Plaintiff. In it, he says that Plaintiff showed him her wallet which he agrees looks like Almos's. He says Plaintiff told him if she was on video going through a wallet, it was hers. However, Defendant failed to provide his supplemental report to the warrant officer, Prosecutor or the Magistrate Judge for their probable cause consideration. Does information in Defendant's non-disclosed report tend to negate probable cause? A jury must decide. There is a genuine dispute that Defendant withheld facts within his knowledge that a reasonable person would want to know when making a probable cause determination.

**Questions of Fact Exist On The Second Prong: Whether Misrepresentations and Omissions were Material to the Probable Cause Determination**

The Court finds that a reasonable juror could conclude that the probable cause determination made by the judge was based on a report that was constitutionally deficient because it contained false statements about what the video shows, and omitted exculpatory information.

Defendant says, assuming *arguendo* that he recklessly misstated facts in his report, he is entitled to qualified immunity because Plaintiff has not provided evidence which would negate the finding of judicial probable cause.

The issue is whether the false statements and omission are material to a finding of probable cause. To determine materiality, the Court must decide whether there was probable cause to believe Plaintiff committed the theft after excluding the misstatements and including the omission. *Wilson*, 212 F.3d at 789; *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (a Fourth Amendment violation exists if, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause"). That is, if material that is the subject of the reckless disregard is set aside, there remains sufficient context to support probable cause, the challenge to probable cause fails. *Franks v. Delaware,* 438 U.S. 154 (1978).

**Probable Cause**

A reasonable jury could find that Plaintiff was arrested without probable cause.

The Court viewed the critical videotape so that it could be informed of the facts upon which Defendant acted.

The tape does not show what the witnesses urged. Defendant's initial view of the tape informed him of that, and a jury could conclude that it was then incumbent on Defendant to look at more of the videotape, particularly since there was more than a

13

three hour lapse of time between when Almos left her wallet and when she returned for it; Defendant reviewed a very small portion of the tape in concluding that Plaintiff was the thief. In light of the videotape evidence against the real suspect, and that the tape did not show what Defendant reported, a jury could conclude that Defendant did not have reasonably trustworthy information from the witnesses.

Defense counsel suggested at the hearing that it was not incumbent upon Defendant Dalton to review the entire videotape before writing his report, inasmuch as the Laundromat owner and Almos directed his attention to the relevant portion of the videotape. Further, counsel argued that Defendant Dalton did not have to conduct a thorough investigation if he had satisfied himself that he had probable cause to arrest Plaintiff.

While the Court agrees that a "thorough" investigation was not required, *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988), whether the arrest was constitutionally valid depends, in turn upon whether, "at the moment the arrest was made, the officers had probable cause to make it -- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing the petitioner had committed or was committing an offense." *Beck*, 379 U.S. at 91. Mere presence is not sufficient to establish probable cause. *Harris v. Bornhorst*, 513 F.3d 503, 515 (6th Cir. 2008), *cert. denied*, 554 U.S. 903 (2008) ("[I]t is well-established that an individual's mere presence at a crime scene does not constitute probable cause for an arrest.").

Defendant Dalton argues that, at worst, his failure to review the entire tape before completing his report for purposes of seeking a warrant, amounts to negligence.

14

Whether Defendant's conduct is negligent or reflects a wilful disregard for the truth, is a question for the jury. Until that issue is decided, the Court cannot rule on Defendant's request for qualified immunity.

Further, as Plaintiff argues in response to Defendant's motion, she was at the Laundromat doing her laundry, and a video of her handling her own wallet is consistent with a person doing laundry. Whether this amounts to sufficient probable cause to believe Plaintiff committed an offense is a question for the jury. *Wilson v. Morgan*, 477 F.3d 326, 334 (6th Cir. 2007). ("[T]he existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.").

The Court declines to decide the issue of qualified immunity at this time; Defendant's entitlement to it turns on whether Defendant acted with reckless disregard for the truth and whether his recklessness was material to the probable cause determination: questions reserved for the jury. (See *Hill v McIntyre* 884 F. 2d 271, 276-77 (6th Cir. 1989) (stating that "the question whether the judicial officer issuing the warrant would have done so even without the knowingly or recklessly false statement is one for the jury...")).

### 2. THE PROSECUTION (Count I)

The Sixth Circuit "recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment which encompasses wrongful investigation, prosecution, conviction and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). In order to prevail on this claim, a plaintiff must demonstrate that (1) the defendant participated in the decision to prosecute the plaintiff, (2) probable cause did not support the institution of legal process, (3) the plaintiff suffered a Fourth

Amendment deprivation of liberty in addition to the initial seizure as a result of the institution of proceedings, and (4) the outcome of legal proceedings was in the plaintiff's favor. *Id.* at 308-09. "[A] plaintiff must show, at a minimum, that there was no probable cause to justify [his] arrest and prosecution." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)(citations omitted); see also *Sykes*, 625 F.3d at 310-11 (same).

Plaintiff's claim for malicious prosecution fails because the charge against Plaintiff was voluntarily dismissed. *Cheolas v. City of Harper Woods*, 2012 U.S. App. LEXIS 802, 2012 WL 89173 (6th Cir. Jan. 10, 2012) (finding no viable claim for malicious prosecution because the charges were voluntarily dismissed). Summary judgment is granted to Defendant on this claim.

### 3. DUE PROCESS CLAIM (Count I)

*Brady v. Maryland,* 373 U.S. 83 (1963), imposes an obligation on the police to disclose evidence whose exculpatory value is *apparent* to officers. *Army v. Collins,* No. 11-1791, 2012 U.S. App. LEXIS 14946, 2012 WL 2913736, (6th Cir. Jul 18, 2012*)(*citing *Moldowan v. City of Warren*, 578 F.3d 351, 381, 388 (6th Cir. 2009)(emphasis added). An officer's duty is discharged once he delivers such evidence to the prosecutor's office. *Moldowan*, 578 F.3d at 381. "The failure to fulfill that obligation constitutes a due process violation, regardless of whether a criminal defendant or § 1983 plaintiff can show that the evidence was destroyed or concealed in bad faith." *Id.* at 388.

Accordingly -- and contrary to Defendant's position -- a *Brady* violation can be maintained against a police officer. *Id.* at 381 (rejecting the argument that a Plaintiff may not bring a *Brady* violation against a police officer, holding that "the due process guarantees recognized in *Brady* also impose an analogous or derivative obligation on

16

the police," and that a violation of that obligation can result in civil liability). But, there is no *Brady* violation where there is no conviction. *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) (the underlying criminal proceedings terminate in [the plaintiff's] favor, he has not been injured by the act of wrongful suppression of exculpatory evidence); *Johnson v Scheidler*, 2007 U.S. Dist. LEXIS 27815, 2007 W.L. 1119876, *18 (E.D. Mich. 2007) ("a party cannot maintain a § 1983 due process claim under Brady if the party was never convicted").

Because the charge against Plaintiff was dismissed, Plaintiff fails to state a *Brady* violation. Summary judgment is granted to Defendant on this § 1983 claim.

**B.     State Claims**

Plaintiff's state law claims are intentional torts. In *Ross v Consumer Powers*, 420 Mich. 567, 363 N.W.2d 641 (1984), the Michigan Supreme Court explained that governmental employees are entitled to qualified immunity in the context of intentional torts provided the: (1) employee acted reasonably in the scope of his employment; (2) acts were taken in good faith; and (3) acts were discretionary. *Id.* at 633. Good faith is defined as without malice. *Miller v. Sanilac Cnty*, 606 F.3d 240, 254 (6th Cir. 2010) (citing *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217, 225 (Mich. 2008)). "Malice may be inferred from absence of probable cause." *Id.* (*citing Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 617 (Mich. 1981)).

    **1.     FALSE ARREST AND IMPRISONMENT (Counts II and III)**

"The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Walsh v. Taylor*, 263 Mich. App.

618, 689 N.W.2d 506, 514 (Mich. Ct. App. 2004). False imprisonment also requires that "[t]he restraint . . . occurred without probable cause to support it." *Id.*

To establish a claim of false arrest, Plaintiff must show Defendant "participated in an illegal and unjustified arrest, and that [Defendant] lacked probable cause to do so." *Id.* For the reasons stated above, a reasonable jury could conclude that Defendant acted in bad faith. Defendant's motion for summary judgment on this claim is denied.

### 2. MALICIOUS PROSECUTION (Count IV)

Plaintiff did not respond to Defendant's malicious prosecution arguments. The Court finds that Plaintiff waived this cause of action. Under Rule 56(e) of the Rules of Civil Procedure, a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,(1986).

### VI. CONCLUSION

The Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Questions of fact remain which preclude the Court granting summary judgment on Plaintiff's § 1983 arrest claim and her state law claims of false arrest and imprisonment. Plaintiff points to false and misleading statements and omissions, based on discrepancies between the police report used to obtain a warrant, and the Laundromat security video. It will be for a jury to decide whether Defendant presented false information or omitted material facts.

Because facts are in dispute as to whether Plaintiff's constitutional rights were violated, the Court cannot grant Defendant qualified immunity. In the end, if a jury

believes that Defendant supplied false information, or withheld material information, qualified immunity will be unavailable to him.

The Court **GRANTS** summary judgment on Plaintiff's § 1983 malicious prosecution and *Brady* violation and state law claim of malicious prosecution.

This case will proceed to trial on Plaintiff's federal claim of unlawful arrest and state law claims of false arrest and imprisonment.

Among the questions a jury must decide are:

(1) Was Defendant negligent for not reviewing the entire tape?

(2) Did Defendant have a duty to update the information he provided to the warrant officer?

(3) Did Defendant act with reckless disregard for the truth when he failed to review the entire tape?

(4) Was any false or omitted information material to the finding of probable cause?

(5) Was there probable cause to arrest Plaintiff after omitting the false information and including the omitted information?

**IT IS ORDERED**.

                /s/ Victoria A. Roberts
                Victoria A. Roberts
                United States District Judge

Dated: November 20, 2012

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 20, 2012.

s/Linda Vertriest
Deputy Clerk

---